UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DESHONE H.,<br><br>                Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CASE NO. C19-5515 BAT<br><br>**ORDER REVERSING THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff seeks review of the denial of his application for Supplemental Security Income. He contends the ALJ erred by rejecting his testimony and three medical opinions. Dkt. 12. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**DISCUSSION**

**A.    Plaintiff's Testimony**

Plaintiff testified he frequently gets irritated and angry and isolates himself. Tr. 153. Racing thoughts prevent him from concentrating. Tr. 153-54. He gets anxiety and panic attacks. Tr. 159. An ALJ may "reject [a claimant's] testimony only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Here, the ALJ found evidence of malingering.

AR 31-32. Plaintiff argues the malingering "tended to establish the character of Plaintiff's mental impairments." Dkt. 17 at 8. Plaintiff's interpretation of the medical evidence does not square with the plain fact there is evidence of malingering. The Court thus cannot say the ALJ unreasonably discounted Plaintiff's testimony based upon malingering. The Court accordingly affirms the ALJ's assessment of Plaintiff's testimony.

**B.     Medical Opinions**

Plaintiff contends the ALJ erred by rejecting the opinions of examining psychologist Terilee Wingate, Ph.D., non-examining psychologist Faulder Colby, Ph.D., and treating therapist Ramona Marshall, M.A. Dkt. 12 at 4-10. In general, the ALJ must give specific and legitimate reasons for rejecting an examining doctor's opinion that is contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An ALJ may reject the opinion of a non-acceptable medical source, such as a therapist, by giving reasons germane to the opinion. *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014).

*1.     Terilee Wingate, Ph.D.*

In 2013, Dr. Wingate examined Plaintiff and opined he had marked limitations in maintaining punctual attendance, communicating and performing effectively, maintaining appropriate behavior, and completing a normal work day and work week without interruptions from psychologically based symptoms. Tr. 853. Dr. Wingate's mental status examination findings were within normal limits except for dysphoric mood and blunted affect, and a malingering assessment showed that "memory malingering is likely." Tr. 856, 854-55. In 2016, Dr. Wingate again examined Plaintiff, finding new abnormalities in fund of knowledge,

concentration, abstract thought, and judgment, and opined the same limitations as in 2013. Tr. 1180, 1178. A malingering assessment was not performed.

The ALJ gave Dr. Wingate's 2013 and 2016 opinions little weight because they were inconsistent with her own and other medical findings. Tr. 34. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (affirming rejection of doctor's opinion that was contradicted by her own and other medical examiners' reports). Plaintiff challenges only the rejection of Dr. Wingate's 2016 opinions.

### a) Other Medical Findings

Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining eligibility for Social Security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, "'doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.'" *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)).

The ALJ found Dr. Wingate's opinions were contradicted by evidence that Plaintiff's symptoms were stable with treatment. Tr. 34. However, the records the ALJ cited do not show effective control of Plaintiff's mental health impairments. In visits between March 2014 and March 2016, Plaintiff consistently reported being down, depressed, or hopeless, and he was frequently described as depressed or with a flat affect. Tr. 984-1005. In August 2014 he reported that his mental health medications were "not working" and caused side effects such as dizziness. Tr. 993. A September 2015 record the ALJ cited shows that Plaintiff likely has "foundational psychiatric issues," although he may also be malingering. Tr. 1174. A September 2016 record shows Plaintiff felt a recent medication increase was helpful, but only for the past

two days. Tr. 1202. By January 2017, Plaintiff reported frustration, side effects, and "a significant increase in s[ymptoms]" of anxiety and agitation with recent medication changes. Tr. 1216, 1215. He sought inpatient treatment, and his therapist agreed to check on bed availability. Tr. 1216. Plaintiff was hospitalized in January 2017 for suicidal ideation and depression, again in April 2017 for bipolar disorder, and again in May 2017 for "increasing depressive symptoms." Tr. 1248, 1279, 1265, 1240. In December 2017, Plaintiff's treating provider wrote despite "a complex medication regime," he "continues to struggle [with] significant [symptoms] of PTSD and bipolar disorders. He has decompensated about 3 times in past 6 [months] and has used drugs and [alcohol] when he does. He has been hospitalized 2-3 times in past 6 [months]." Tr. 1593. Plaintiff was hospitalized yet again in December 2017. Tr. 1682. Given this record, periodic notations of normal mood and affect during physical health appointments, or that Plaintiff was "handl[ing] stress much better," are not substantial evidence supporting the ALJ's finding that Plaintiff's impairments were well controlled with medication. Tr. 1648. The ALJ also cited several instances where Plaintiff reported feeling better after medication changes. *See*, *e.g.*, Tr. 1654, 1679. But the fact Plaintiff's medications were changed so frequently demonstrates that stable improvement remained elusive. Improvement with medication was not a specific and legitimate reason to discount Dr. Wingate's opinions.

          b) <u>Dr. Wingate's Own Findings</u>

The ALJ also discounted Dr. Wingate's opinions because she found malingering in her 2013 examination, yet still "assessed significant limitations." Tr. 34. Dr. Wingate's opinions clearly account for her findings. Her clinical findings showed that "memory malingering is likely." Tr. 856. Accordingly, she assessed Plaintiff's memory as "within normal limits," despite the fact that he remembered none of four words after five minutes. Tr. 855. Dr. Wingate

clearly accounted for the malingering in reaching her conclusions. The ALJ also stated Dr. Wingate's "assessments are inconsistent with [Plaintiff's] performances during both evaluations," but does not explain how. Tr. 34. Dr. Wingate found many clinical abnormalities in her 2016 examination to support her opinions. Conflict with her own findings was not a specific and legitimate reason to discount Dr. Wingate's opinions.

          c)     <u>Substance Abuse</u>

The ALJ discounted Dr. Wingate's opinions because Plaintiff "failed to provide accurate information to the doctor regarding his ongoing substance abuse." Tr. 34. The ALJ failed to explain how knowing Plaintiff's full substance use history would alter Dr. Wingate's opinions. The only relevant information in the record is Plaintiff's treating provider's assessment that when Plaintiff decompensates, he uses drugs. Tr. 1593; *see also* Tr. 2209 ("his substance use disorders … tend to be related to an increase in his mental health symptoms"). In other words, his mental impairments cause his substance abuse, not the reverse. Moreover, Plaintiff was in prison until just ten days before Dr. Wingate's examination. Tr. 1166. And there is no evidence that Dr. Wingate relied on a lack of substance abuse in formulating her opinions. Plaintiff reported no current substance abuse but told Dr. Wingate "[w]hile in prison he graduated from their chemical dependency program." Tr. 1176. Dr. Wingate was thus aware of substance abuse in his recent past. Inaccurate information about substance abuse was not a specific and legitimate reason to discount Dr. Wingate's opinions.

The Court accordingly concludes ALJ erred by discounting Dr. Wingate's opinions without a specific and legitimate reason.

//

//

*2.    Faulder Colby, Ph.D.*

The ALJ discounted Dr. Colby's opinions for the "same reasons as those of Dr. Wingate." Tr. 35.  As discussed above, the ALJ erred in rejecting Dr. Wingate's opinions and accordingly similarly erred in relying on the same reasons to reject Dr. Colby's opinions.

*3.    Ramona Marshall, M.A.*

In June 2018, Ms. Marshall opined Plaintiff's mental health symptoms had "a significant impact on his ability to function in daily life." Tr. 2208.  The ALJ gave Ms. Marshall's opinions little weight as inconsistent with the medical evidence and Plaintiff's activities, and because she "failed to address" Plaintiff's substance abuse history.  Tr. 35-36.  The ALJ's finding Ms. Marshall failed to address substance abuse is inexplicable.  Ms. Marshall addressed it directly in her opinion, stating Plaintiff's "substance use disorders … tend to be related to an increase in his mental health symptoms." Tr. 2209.  Her treatment notes further explain it is when Plaintiff decompensates that he uses drugs and then is hospitalized.  Tr. 1593.  Ms. Marshall, a trained medical professional, interpreted the medical evidence as showing that when Plaintiff's mental health symptoms increase, he then uses drugs.  Because the ALJ's finding Ms. Marshall failed to address substance abuse was not supported by substantial evidence, it cannot be a germane reason to discount her opinions.

The ALJ found Ms. Marshall must have relied on Plaintiff's subjective reports because her opinions were "grossly inconsistent" with the medical evidence.  Tr. 35.  As discussed above, the ALJ's finding Plaintiff's mental health symptoms are well controlled with medication was not supported by substantial evidence in the medical record, and accordingly was not a germane reason to discount Ms. Marshall's opinions.

The ALJ cited Plaintiff's activities of spending time with his children; basic activities of daily living such as self-care, cooking, household chores, and shopping; and exercising at the YMCA. Tr. 36, 32. None of these contradict Ms. Marshall's opinions. Plaintiff sees his children "when [he is] up to it." Tr. 155. His "mood won't allow [him] to see them every day." Tr. 156. Plaintiff reported that at most he cooks "TV dinners." Tr. 484. He has lost weight because he forgets to eat. Tr. 1224. He does not shop or do chores regularly. Tr. 484-85, 158. Irregular visits to the YMCA does not contradict Ms. Marshall's opinions of significant impairments in daily functioning. Plaintiff's activities were not a germane reason to discount Ms. Marshall's opinions. The Court accordingly concludes the ALJ erred by discounting Ms. Marshall's opinions without a germane reason.

**C.     Scope of Remand**

Plaintiff requests the Court remand for benefits or, in the alternative, for further administrative proceedings. Dkt. 12 at 12. Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ

would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly discredited evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The second step is not satisfied. Plaintiff simply asserts the "record is complete." Dkt. 12 at 12. But the medical opinions the ALJ erroneously rejected remain contradicted by other evidence in the record, including the opinions of the state agency doctors that Plaintiff has the mental capacity to work. *See* Tr. 186-88, 203-04. It is the ALJ's role to resolve conflicts in medical testimony, not the Court's on appeal. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court therefore concludes further administrative proceedings would be useful and, accordingly, remand for further proceedings.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. Wingate, Dr. Colby, and Ms. Marshall, develop the record and reassess the RFC as needed, and proceed to step five as appropriate.

DATED this 13th day of December, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge